IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

vs.　　　　　　　　　　　　　　　　Civil Action No. _____

UNITED PARCEL SERVICE, INC.

        Defendant.
_____/

## PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S COMPLAINT AND DEMAND FOR JURY TRIAL

This is an action under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.* ("ADA")*,* as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat 3553 (2008) (codified as amended in scattered sections of 42 U.S.C.), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a. The United States Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant United Parcel Service, Inc. ("UPS" or "Defendant") discriminated against Charging Party Mark Fowler ("Mr. Fowler") when it failed to accommodate him and terminated him on the basis of his disability (diabetes) in violation of 42 U.S.C. § 12112(a).

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Jacksonville Division.

## PARTIES

3. The Commission is an Agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. Defendant is a multi-national shipping, receiving, and supply chain management company.

5. One of Defendant's warehouses is located in Jacksonville, Florida.

6. At all relevant times, Defendant has continuously done business in Florida, and has continuously had at least fifteen employees.

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7), which incorporates by reference 42 U.S.C. 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e (b), (g), and (h).

8. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEEDINGS

9. More than thirty days prior to the institution of this lawsuit, Mr. Fowler filed a charge of discrimination with the Commission against Defendant alleging disability discrimination in violation of the ADA.

10. The Commission sent Defendant notice of Mr. Fowler's discrimination charge.

11. The Commission issued a Letter of Determination on October 29, 2020 finding reasonable cause to believe that Defendant discriminated against Mr. Fowler because of his disability (diabetes).

12. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

13. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

15. UPS is a multinational shipping, receiving, and supply chain management company.

16. Mark Fowler has a disability, known as brittle diabetes.

17. Mr. Fowler wears an insulin pump and a continuous glucose monitor. Mr. Fowler monitors his blood sugar on a continuous basis and needs to check his blood sugar every one-to-two hours to determine whether he needs to eat or drink something to regulate his blood sugar.

18. Mr. Fowler's brittle diabetes substantially impacts, either with or without mitigating measures major life activities, including without limitation, his endocrine function, eating, and sleeping.

19. Around September 2019, Mr. Fowler applied to work at UPS as a Pre-Loader—a position also known as Package Handler—to work at the UPS warehouse located in Jacksonville.

20. About one week after submitting the application, Regina Zeigler Madison, UPS Human Resources Supervisor, invited Mr. Fowler for an interview and to tour the UPS warehouse facility located in Jacksonville.

21. During this in-person interview, Mr. Fowler discussed his diabetes and his need for a reasonable accommodation with Ms. Zeigler Madison.

22. The accommodation Mr. Fowler requested was to be able to check his blood sugar every one-to-two hours between unloading trailers. Mr. Fowler also asked that on those occasions that the blood sugar check revealed that his blood sugar was low, he would be able to take a brief break (less than five minutes) to eat or drink something to regulate his blood sugar. Ms. Zeigler Madison initially said that Mr. Fowler's requested accommodation would be acceptable.

23. During his in-person interview, Mr. Fowler was offered the position to work as a package handler for UPS during the shift referred to as "pre-loader" shift.

24. At all material times, Mr. Fowler was able to perform the essential functions of the package handler job on the UPS shift referred to as the "pre-loader" shift with or without a reasonable accommodation.

25. At all material times, Mr. Fowler was able to work the pre-loader shift; he is capable of lifting heavy packages, loading packages, organizing packages, assembling cartons, using hand tools, and other related tasks.

26. Mr. Fowler began working for UPS on September 24, 2019, on the night shift. He completed his first shift without any issues.

27. At the end of his shift, Ms. Zeigler Madison asked Mr. Fowler to see him in her office. In the meeting in her office, Ms. Zeigler Madison told Mr. Fowler that he was not capable of doing the job because of his disability and tried to change his position from a permanent position to a temporary position. Mr. Fowler explained that he did not want a temporary position as that was not the position that he applied for and that he was capable of doing his job with the accommodation he requested.

28. Mr. Fowler returned to work the night shift at UPS on September 25, 2019. Again, he was able to perform his job at UPS, with his accommodation, without any issues. Towards the end of his shift, Ms. Zeigler Madison asked Mr. Fowler to visit her in her office. Ms.

Zeigler Madison told Mr. Fowler that he was a liability to the company in reference to his disability.

29. Ms. Zeigler Madison also informed him that UPS would not grant him his request for the reasonable accommodation—without providing Mr. Fowler any explanation.

30. Shortly after leaving his night shift of September 25th, Ms. Zeigler Madison called Mr. Fowler and left him a voicemail message terminating his employment at UPS.

31. UPS was unwilling to provide Mr. Fowler with a reasonable accommodation for his disability.

32. UPS terminated Mr. Fowler's employment at UPS because of his disability

33. As a result, Mr. Fowler has been damaged.

## STATEMENT OF CLAIMS

34. Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

35. Mr. Fowler is a qualified individual with a disability as defined by the ADA.

36. UPS discriminated against Mr. Fowler in violation of 42 U.S.C. § 12112(a) and (b)(5) by not providing a reasonable accommodation.

37. UPS discriminated against Mr. Fowler in violation of 42 U.S.C. § 12112(a) and (b)(5) by terminating his employment because of his disability.

38. As a direct and proximate result of the practices complained of in the foregoing paragraphs, Mr. Fowler has suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

39. The unlawful employment practices complained of in the foregoing paragraphs were intentional and were done with malice or with reckless indifference to the federally protected rights of Mr. Fowler.

40. The effect of the practices complained of in the foregoing paragraphs has been to deprive Mr. Fowler of equal employment opportunities and otherwise to adversely affect his status as an employee because of his disability.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

41. Grant a permanent injunction enjoining Defendant, its officers, parent(s), successors, assigns, agents, managers, employees and all persons in active concert or participation with it, from engaging in

employment practices which discriminate against qualified individuals on the basis of disability;

42. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;

43. Order Defendant to make Mr. Fowler whole by providing compensation for past, present, and future pecuniary losses, including job search expenses, resulting from the unlawful employment practices complained of herein, in amounts to be determined at trial, and other affirmative relief as necessary to eradicate the effects of Defendant's unlawful employment practices;

44. Order Defendant to make Mr. Fowler whole by providing compensation for past, present, and future non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

45. Order Defendant to make Mr. Fowler whole by providing appropriate back pay with pre-judgment interest and lost benefits, in amounts to be

determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

46. Order Defendant to reinstate Mr. Fowler to work at UPS as a pre-loader or package handler, or to pay front pay in lieu thereof.

47. Order Defendant to pay Mr. Fowler punitive damages for engaging in intentional discrimination with malice or with reckless indifference, in amounts to be determined at trial;

48. Grant such other further relief as the Court deems necessary and proper in the public interest; and

49. Award the Commission its costs in this action.

## JURY TRIAL DEMANDED

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Dated: June 30, 2021.

Respectfully submitted,

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
Acting General Counsel
U.S. Equal Employment Opportunity Commission

131 M Street, N.E.
Washington, D.C. 20507

ROBERT WEISBERG
Regional Attorney

KRISTEN FOSLID
Supervisory Trial Attorney

s/Carmen Manrara Cartaya
CARMEN MANRARA CARTAYA
Trial Attorney
Florida Bar No.  0073887
U.S. Equal Employment Opportunity Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: 786-648-5811
Carmen.Cartaya@eeoc.gov