## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION,

      Plaintiff,

MARK FOWLER,

      Intervenor,

v.                            Case No. 3:21-cv-656-BJD-LLL

UNITED PARCEL SERVICE,
INC.,

      Defendant.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Plaintiff, Equal Employment

Opportunity Commission's ("EEOC") Motion for Summary Judgment (Doc.

63); Defendant, United Parcel Service's ("UPS") Response in Opposition (Doc.

76); and the EEOC's Reply (Doc. 77). The Court also considers UPS's Motion

for Summary Judgment (Doc. 64) and the attendant briefing (Docs. 73, 75,

78, and 79).

The EEOC initiated this action with its complaint that UPS violated

the American with Disabilities Act, 42 U.S.C. § 12101 et seq., by failing to

provide a reasonable accommodation for Intervenor, Mark Fowler's diabetes

management and by terminating Mr. Fowler's employment. (Doc. 1). Mr. Fowler asserts parallel claims and claims for retaliation as an intervenor in this case pursuant to federal and state law.[1] (Doc. 9). The EEOC moved for summary judgment on its claims against UPS and UPS moved for summary judgment as to the EEOC and Mr. Fowler's claims. Mr. Fowler did not seek summary judgment on his claims.

### A. Background

Mr. Fowler was diagnosed with Type I diabetes as an infant. (Doc. 62.6 at 1). Mr. Fowler's condition is severe and causes his blood sugar to fluctuate. Id. When his blood sugar drops, he becomes confused, drowsy, loses his balance, and cannot function. Id. at 2. If left untreated, Mr. Fowler's condition can be fatal. Id. Sudden changes in his blood sugar require Mr. Fowler to monitor his blood sugar hourly and to have access to a snack or drink to maintain stable blood sugar levels. Id. at 1.

In his application to work for UPS, Mr. Fowler reported his disability.[2] (Doc. 62.1 at 22). Shortly after applying, Regina Zeigler-Madison, a human resources supervisor, asked Mr. Fowler to interview for the position of pre-loader. Id. at 12. Pre-loaders are responsible for unloading boxes onto a

---

[1] Fowler invokes Florida Statutes section 760 et seq.

[2] UPS employees at Mr. Fowler's location could not see the portion of the application where an applicant can self-disclose a disability. (Doc. 62.4 at 26).

conveyor. (Doc. 62.6 at 1). During the interview, Ms. Zeigler-Madison asked Mr. Fowler if he had any disabilities. (Doc. 62.1 at 14). Mr. Fowler responded affirmatively. Id. Mr. Fowler told Ms. Zeigler-Madison that he would need breaks to monitor his blood sugar and sometimes to eat a snack. Id. Ms. Zeigler-Madison let Mr. Fowler know that his requested accommodation would not pose a problem.[3] Id. After the pair discussed other topics such as pay, Ms. Zeigler-Madison offered Mr. Fowler a position as a pre-loader to begin on September 24, 2019. Id.

Mr. Fowler began working for UPS on September 24, 2019. (Doc. 62.6 at 1). The first day involved training and watching videos about safety. (Doc. 62.1 at 24-25). After the training concluded, Ms. Zeigler-Madison pulled Mr. Fowler aside and into her office. Id. at 26. She told Mr. Fowler that he was unfit for his position because of his disability and that he was a liability. Id. at 26-27. Mr. Fowler disagreed by highlighting that he performed the same job for FedEx for over a year. Id. at 27.

Mr. Fowler reported for work the following day to finish his training and to start unloading packages. Id. at 29-30. Mr. Fowler was told to report to part-time supervisor Robin Pruett. Id. at 30. Mr. Fowler was also expected

---

[3] Mr. Jones testified that employees were expected to continuously drink while working because of the heat and required physical exertion. (Doc. 62.2 at 15). While UPS provided water, employees were free to drink Gatorade and other drinks as they worked. Id.

to work under Joseph Jones, the full-time pre-loader supervisor.[4] Mr. Fowler wore an insulin pump as part of his diabetes management. (Doc. 62.6 at 1). Though the pump connected through a cord, it did not catch on anything while Mr. Fowler worked. Id. Mr. Jones noticed Mr. Fowler's insulin pump cords protruding under Mr. Fowler's shirt when Mr. Fowler was unloading a truck. (Doc. 62.2 at 21). Mr. Jones told Mr. Fowler that having an insulin pump can be a "hard situation." Id. at 6 and 21. In response to Mr. Fowler asking for accommodations, Mr. Jones also told Mr. Fowler that he had a problem with Mr. Fowler taking breaks for his diabetes management and things needed to be "reevaluated." Id. at 21. Mr. Jones thought managing diabetes was a "very delicate and time-consuming situation" and worried that Mr. Fowler could hurt himself and UPS equipment. Id.

Mr. Jones relayed his concerns with Mr. Fowler's diabetes management to Ms. Zeigler-Madison. (Doc. 62.2 at 41). Ms. Zeigler-Madison and Mr. Jones discussed Mr. Fowler's condition, wherein the two agreed it was an issue. Id. Mr. Jones assured Ms. Zeigler-Madison that "we'll deal with it." Id. Soon after Mr. Jones and Ms. Zeigler-Madison met, Ms. Zeigler-Madison called Mr. Fowler into her office. (Doc. 62.1 at 34). She expressed her concerns with Mr. Fowler's disability and offered to reassign Mr. Fowler to a temporary

---

[4] UPS never provided the contact information for Mr. Fowler's supervisors. (Doc. 62.6 at 2). His direct point of contact for hiring was Regina Zeigler-Madison Id.

position. Id. She again told Mr. Fowler he was a liability in a manner that approached yelling. Id. 35. Mr. Fowler declined Mr. Zeigler-Madison's offer to reassign him from a permanent position to a temporary one. Id.

Within an hour or two after the meeting, Ms. Zeigler-Madison left a voicemail on Mr. Fowler's phone. (Doc. 62.7); (Doc. 62.6 at 2). She identified herself as being from UPS's human resources department and informed Mr. Fowler that his second day on the job would be his last. Id. Mr. Fowler was under the impression that Ms. Zeigler-Madison had the authority to fire him and believed he was terminated from his job at UPS. (Doc. 62.1 at 38).[5]

There is no evidence that Mr. Fowler resigned. Importantly, Mr. Fowler swore he did not resign. (Doc. 62.6 at 2). Mr. Jones testified that Mr. Fowler never gave the impression that he wanted to stop working at UPS or planned on surrendering his employment. (Doc. 62.2 at 41). In fact, Mr. Jones stated that Mr. Fowler's attitude was positive and determined to be productive despite his disability. Id. at 21. Mr. Jones was unaware of anyone terminating Mr. Fowler's employment, and would have been notified had Mr.

---

[5] Ms. Zeigler-Madison's job description tasked her with "administering and communicating" procedures and policies regarding employment. (Doc. 62.9). She reviewed applications, interviewed applicants, and decided who to hire. (Doc. 62.5 at 16). UPS denies that Ms. Zeigler-Madison had the authority to fire anyone, but admits she had authority to relay a supervisor's decision to fire someone. (Doc. 62.4 at 17-20). In this case, the person who would have authority to fire Mr. Fowler was Mr. Jones and Mr. Jones's supervisor Mr. Brantley. (Doc. 62.2 at 9-10, and 36).

Fowler been terminated. Id. at 70. Ms. Zeigler-Madison did not possess authority to terminate anyone's employment, according to Mr. Jones. Id.

### B.   Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the Court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats &

Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### C.  Discussion

#### 1.  *Failure to Accommodate*

"The ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer." Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1526 (11th Cir. 1997). To establish a viable failure to accommodate claim a plaintiff "must demonstrate by a preponderance of the evidence that

(1) she was a qualified individual with a disability; (2) she made a specific request for a reasonable accommodation; and (3) her employer [ ] failed to provide a reasonable accommodation, or engage in the requisite interactive process in order to identify a reasonable accommodation." <u>D'Onofrio v. Costco Wholesale Corp.</u>, 964 F.3d 1014, 1021 (11th Cir. 2020).[6] The burden of establishing the availability of a reasonable accommodation rests with the plaintiff while the burden of persuasion that an accommodation would constitute an undue hardship rest with the employer. <u>Holbrook</u>, 112 F.3d at 1526.

The evidence is beyond dispute that Mr. Fowler was qualified to perform his work as a pre-loader, as he had performed similar work when he worked at FedEx. Additionally, UPS believed Mr. Fowler was qualified to work as a pre-loader. (Doc. 62.11).  It is also undisputed that Mr. Fowler is a person with a disability based on his life-long struggle to manage his diabetes that includes insulin injections through a pump—the failure of which leads to severe mental and physical impairments, including death. <u>See</u> <u>Jones v. McDonald</u>, No. 17-20153-CIV, 2018 WL 3629592, at *10 (S.D. Fla. June 12, 2018) ("Courts applying the current version of the ADA have agreed, finding

---

[6] Because Florida's FCRA runs parallel to the ADA, the Court considers Mr. Fowler's claims under the FCRA tacitly in its discussion of the EEOC's claims pursuant to the ADA. <u>See</u> <u>Samson v. Fed. Express Corp.</u>, 746 F.3d 1196, 1200 (11th Cir. 2014).

that a plaintiff can show she is disabled merely by alleging that she suffers from diabetes and takes medication for it.") (internal quotations omitted); see also (Doc. 65.1 at 5 (UPS Application identifying diabetes as a disability)).

The evidence is undisputed that Mr. Fowler identified as being disabled on his application, in his interview, and during each day of his tenure at UPS. He requested accommodations came in the form of additional breaks to monitor and maintain his blood sugar levels. Because it took minimal time for Mr. Fowler to monitor his blood sugar, and potentially to eat or drink so he could maintain or adjust his blood sugar levels, the accommodations were reasonable. UPS does not offer evidence that Mr. Fowler's requests would cause an undue hardship, but rather that Mr. Fowler's requests were unnecessary because employees could drink while working. In other words, UPS argues no accommodation was required because they were not needed for Mr. Fowler to perform his job duties.

The record unequivocally belies UPS position. The undisputed facts are that Mr. Jones and Ms. Zeigler-Madison viewed Mr. Fowler's request for accommodations as a problem. Mr. Jones conceded he told Mr. Fowler he had a problem with him taking breaks to manage his diabetes. Instead of working with Mr. Fowler or trying to accommodate him, UPS classified him as a liability, berated him, and remarked that Mr. Fowler placed himself and UPS's equipment in danger. UPS made no attempt to provide reasonable

accommodations to Mr. Fowler and made no showing that accommodations would place an undue hardship upon UPS. Accordingly, the EEOC is entitled to prevail on the liability portion of its claim that UPS failed to accommodate Mr. Fowler's disability.

2.    *Discrimination*

"The ADA makes it unlawful for an employer to 'discriminate against a qualified individual on the basis of disability in regard to ... discharge of employees ... and other terms, conditions, and privileges of employment.'" Todd v. Fayette Cnty. Sch. Dist., 998 F.3d 1203, 1214 (11th Cir. 2021) (quoting 42 U.S.C. § 12112(a)). To succeed on summary judgment, a plaintiff must offer either direct evidence of discrimination or, in the more common scenario, circumstantial evidence of discrimination. Id. Direct evidence is evidence that "proves the existence of a fact without inference or presumption."[7] Fernandez v. Trees, Inc., 961 F.3d 1148, 1156 (11th Cir. 2020). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." Id. (internal quotations and alteration omitted).

---

[7] Although Fernandez is a race-discrimination case, ADA discrimination cases are analyzed under the same framework as cases brought under Title VII and the ADEA (Age Discrimination in Employment Act). Todd, 998 F.3d at 1214 n.7.

In the absence of direct evidence, plaintiff may rely on circumstantial evidence of discrimination or retaliation. Circumstantial evidence may consist of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). In such circumstances, the Court applies the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1255 (11th Cir. 2012); Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012). Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing that "that she (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of her disability." Todd v. Fayette Cnty. Sch. Dist., 998 F.3d at 1215–16.

If the plaintiff presents a prima facie case, that evidence "creates a presumption that the employer unlawfully discriminated against the employee," and the burden of production then shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981); Chapter 7 Trustee, 683 F.3d at 1255.

If the employer meets this burden of production, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination or retaliation and was not the "true reason for the employment decision." <u>Burdine</u>, 450 U.S. at 256; <u>see also</u> <u>Holifield v. Reno</u>, 115 F.3d 1555, 1565 (11th Cir. 1997) ("[T]he plaintiff has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." (citing <u>McDonnell Douglas</u>, 411 U.S. at 804)). A plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Burdine</u>, 450 U.S. at 256. "Despite these shifts in the burden of production, the ultimate burden of persuasion remains on the plaintiff to show that the defendant intentionally discriminated against her." <u>Alvarez</u>, 610 F.3d at 1264.

Pretext means that the reasons given by the employer were not the real reasons for the adverse employment decision. <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u> 439 F.3d 1286, 1298 (11th Cir. 2006). A reason cannot be a "pretext for discrimination unless it is shown <u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993) (internal quotations omitted) (emphasis in original); <u>see also</u> <u>Faircloth v. Herkel Invs. Inc.</u>, 514 F. App'x 848, 851 (11th Cir. 2013);

<u>Brooks v. Cty. Comm'n of Jefferson Cnty., Ala.</u>, 446 F.3d 1160, 1163 (11th Cir. 2006).

The inquiry as to pretext is based upon "the employer's beliefs, and not the employee's own perceptions of [her] performance." <u>Holifield</u>, 115 F.3d at 1565. The Eleventh Circuit has observed that the inquiry does not center "on reality as it exists outside the of the decision maker's head." <u>Alvarez</u>, 610 F.3d at 1266. So long as the employer's "reason is one that might motivate a reasonable employer, [the] employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1030 (11th Cir. 2000); <u>see also</u> <u>Holland</u>, 677 F.3d at 1055-56. To establish pretext, the plaintiff must identify "'weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" <u>Springer v. Convergys Customer Mgmt. Grp. Inc.</u>, 509 F.3d 1344, 1348-49 (11th Cir. 2007) (quoting <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 725 (11th Cir.2004)); <u>see also</u> <u>Holland</u>, 677 F.3d at 1055-56. However, an "'employer may [take action against] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" <u>Walton v. Cives Corp.</u>, 491 F.

App'x 29, 32 (11th Cir. 2012) (quoting <u>Nix v. WLCY Radio/Rahall Commc'ns</u>,

738 F.2d 1181, 1187 (11th Cir. 1984)).

The Court does not sit as a "super-personnel department," and will not

second guess the business judgment of the employer. <u>Chapman</u>, 229 F.3d at

1030 (internal quotations omitted).  Moreover, the Court is "not in the

business of adjudging whether employment decisions are prudent or fair.

Instead [the Court's] sole concern is whether unlawful discriminatory animus

motivates a challenged employment decision.'" <u>Rojas v. Florida</u>, 285 F.3d

1339, 1342 (11th Cir. 2002) (quoting <u>Damon v. Fleming Supermarkets of Fla.,

Inc.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999)).

It is undisputed that Mr. Fowler was disabled and qualified for his

position as a pre-loader. Viewing the evidence—which, the Court notes is

compelling— in a light most favorable to the EEOC and Mr. Fowler when

considering UPS's motion for summary judgment, Mr. Jones and Ms. Zeigler-

Madison conspired to terminate Mr. Fowler's employment because he was

disabled. Mr. Jones went to Ms. Zeigler-Madison's office after noticing Mr.

Fowler's insulin pump and fielding Mr. Fowler's requests for extra breaks to

express his displeasure that Mr. Fowler was disabled. They agreed to resolve

the situation. Within an hour or two Ms. Zeigler-Madison called Mr. Fowler

into her office to reassign Mr. Fowler to another less desirable position

because of his disability. Ms. Zeigler-Madison directly tied Mr. Fowler's

proposed demotion to him being disabled. When Mr. Fowler declined the
lesser position, Ms. Zeigler-Madison left a voicemail terminating his
employment. UPS's motion for summary judgment against the EEOC and
Mr. Fowler fails because this sequence of events constitutes direct evidence
that UPS sought to reassign and terminate Mr. Fowler's employment because
of his disability.

This leaves the focus of the dispute as to whether Mr. Fowler was
terminated when viewing the evidence in light most favorable to UPS, as the
Court must when considering the EEOC's motion for summary judgment.
The first issue is whether Ms. Zeigler-Madison's voicemail could be viewed by
a jury as not terminating Mr. Fowler's employment. The full transcript of the
message reads as follows:

> Hi Mark, this is Regina calling from UPS in our HR
> department [.] I was calling to let you know that
> today will be your last day at UPS, we will . . . you
> should receive a check on Friday of next week which
> is the 4th of October. We will, uh, send that check out
> to you or you can come back up to UPS on Friday at
> 8:30 . . . and pick up your check. Today is your last
> day at UPS, okay? Thank you.

(Doc. 62.7).

The only interpretation a reasonable juror can make is that this
message was Ms. Zeigler-Madison notifying Mr. Fowler that he was fired.
After identifying herself as being from UPS's human resource department,

she stated the purpose of the call was to "let [him] know" something. That something was "today [was] your last day at UPS[.]" There was no indication whatsoever that Ms. Zeigler-Madison was simply confirming that Mr. Fowler had resigned or voluntarily terminated him employment. She even closes her message to ensure that Mr. Fowler knows he is no longer employed.

This determination is buttressed by the undisputed evidence that the call came within an hour or two of Ms. Zeigler-Madison berating Mr. Fowler for his disability, calling him a liability, and Ms. Zeigler-Madison and Mr. Fowler discussing how Mr. Fowler's disability was a problem. Mr. Fowler's uncontroverted testimony is that he did not resign, and Mr. Jones noted how determined Mr. Fowler was to overcome his disability mere hours before the message. Even viewing the evidence in a light most favorable to UPS, the only reasonable conclusion a juror could reach is that is Ms. Zeigler-Madison's message notified Mr. Fowler that he was fired from UPS.

UPS's next argument is that Ms. Zeigler-Madison was not authorized to fire anyone, and it cannot be held responsible for her rogue actions. Mr. Jones and his manager Mr. Brantley were the only two individuals authorized to fire Mr. Fowler. When considering UPS's motion for summary judgment, the record is reasonably interpreted to establish that Mr. Jones or Mr. Brantley terminated Mr. Fowler's employment and Ms. Zeigler-Madison relayed their decision—which was a function of Ms. Zeigler-Madison's job. Because only

- 16 -

Mr. Jones and Mr. Brantley had authority to fire Mr. Fowler and because Mr. Fowler was fired, then construing the evidence in Mr. Fowler's favor results in a conclusion that Mr. Jones or Mr. Brantley fired Mr. Fowler.

The analysis is more complicated when considering the evidence in a light most favorable to UPS. In that situation, Ms. Zeigler-Madison did not have the authority to fire Mr. Fowler and Mr. Jones and Mr. Brantley did not fire Mr. Fowler. Since Mr. Fowler was fired, then Ms. Zeigler-Madison acted beyond the scope of her authority or misunderstood that Mr. Fowler was to be fired. On the record before the Court, this scenario appears unlikely, but one a reasonable jury could find existed. Still, because of Ms. Zeigler-Madison's apparent authority as a part-time human resource manager who was empowered to relay an employee's termination, UPS is still liable for her termination or relaying of Mr. Fowler's termination to Mr. Fowler.

In Vance v. Ball State Univ., 570 U.S. 421, 424 (2013), the Supreme Court resolved the question of whether an employee qualifies as a supervisor for purposes of vicarious liability under Title VII. The key inquiries were whether the employer empowered that employee to take tangible supervisory action and whether tangible employment action occurred. The Court identified the ability to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in

- 17 -

benefits" as a bright line for determining if an employee was properly classified as a supervisor. Vance, 570 U.S. at 431.

While Ms. Zeigler-Madison did not have actual authority to terminate anyone's employment, including Mr. Fowler's, it is undisputed that she had supervisory job functions, including the ability to hire. If Mr. Jones and Mr. Brantley did not fire Mr. Fowler, then the only explanation from the evidence before the Court is that Ms. Zeigler-Madison fired Mr. Fowler or misunderstood Mr. Jones or Mr. Brantley's intent. Mr. Fowler cannot be faulted for relying on Ms. Zeigler-Madison's termination because she was a supervisor for UPS, fielded his application, interviewed him, hired him, and continually interacted with him as a supervisor during the course of his tenure at UPS. There is no evidence that UPS exercised reasonable care to prevent or correct Ms. Zeigler-Madison's firing of Mr. Fowler. See Vance, 570 U.S. at 421. While UPS is correct to explain Vance was issued in the context of workplace harassment, the Court sees no reason to limit its holding given the similarities between Title VII and the ADA and their shared purpose to prevent the unlawful treatment of employees.

The Court finds that Mr. Jones and Ms. Zeigler-Madison's remarks regarding Mr. Fowler's disability being a liability and disqualifying for work as a pre-loader as direct evidence of their intent to discriminate culminating in nearly immediate termination. However, even under the more meandering

<u>McDonnell Douglas</u> framework, Mr. Fowler made a <u>prima</u> <u>facie</u> showing of discrimination. UPS has not provided a legitimate nondiscriminatory reason for Mr. Fowler's termination as it was indisputably based on his disability and UPS's perception of the liability and inconvenience UPS may encounter. No reasonable juror could find that UPS assumed Mr. Fowler reassigned or voluntarily surrendered his position under these circumstances.

### 3.  *Retaliation*

Title VII (and therefore, the FCRA and ADA) prohibits an employer from retaliating against an employee for opposing any employment practice "made unlawful by the opposition clause in Title VII." <u>Stewart v. Jones Util. & Contracting Co. Inc.</u>, 806 F. App'x 738, 742 (11th Cir. 2020); <u>see</u> <u>also</u> <u>Fuller v. Edwin B. Stimpson Co. Inc.</u>, 598 F. App'x 652, 653 (11th Cir. 2015) ("The FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, so FCRA claims do not need separate discussion and their outcome is the same as the federal claims."). Absent direct evidence of retaliation, as in this case, Title VII requires evidence that the plaintiff "(1) engaged in statutorily protected expression; (2) [ ] suffered an adverse employment action; and (3) there is some causal relationship between the two events." <u>O'Neill v. St. Johns River Water Mgmt. Dist.</u>, 341 F. Supp. 3d 1292, 1303 (M.D. Fla. 2018) (Corrigan, J.) "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the

protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Patterson v. Georgia Pac., LLC, 38 F.4th 1336, 1351 (11th Cir. 2022). A negative employment action is one that could "dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

Retaliation claims are similar to discrimination claims in that if a plaintiff makes a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999). If an employer articulates legitimate reasons for its actions, a plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct. Whitehurst v. Liquid Env't Sols., Inc., 45 F. Supp. 3d 1328, 1349–50 (M.D. Fla. 2014) (Howard, J.).

Only UPS moves for summary judgment on this point, therefore the Court considers the evidence in a light favorable to Mr. Fowler. Mr. Fowler made a prime facie case of retaliation because he offered evidence that he engaged in a protected activity by asking for accommodations which was met by being fired. The timing of his firing along with Ms. Zeigler-Madison's and Mr. Jones remarks sufficiently establish that UPS retaliated against Mr.

Fowler. Moreover, UPS has failed to offer a legitimate reason for firing Mr. Fowler.

### 4.   Punitive Damages

UPS argues that punitive damages are inappropriate in this case. "An employer is liable for punitive damages for its violation of the ADA where the employer is found to have acted with malice or reckless indifference to the plaintiff's federally protected rights." <u>Noel v. Terrace of St. Cloud, LLC</u>, 212 F. Supp. 3d 1193, 1201 (M.D. Fla. 2016). On this record, the Court believes a reasonable jury could find that UPS acted with malice or reckless indifference to Mr. Fowler's rights. Viewing the facts in a light favorably to Mr. Fowler, he requested accommodations for his disability to which UPS responded by deeming him a liability, attempting to demote him, and then firing him.

Accordingly, after due consideration, it is

**ORDERED:**

1. The EEOC's Motion for Summary Judgment (Doc. 63) is **GRANTED to the extent** that the EEOC prevails as to establishing UPS's liability for its failure to accommodate Mr. Fowler's disability and for UPS's unlawful discrimination against Mr. Fowler. The issue of damages remains unresolved.

2. UPS's Motion for Summary Judgment (Doc. 64) is **DENIED**.

3.  Because of the significant change of posture in this case in light of this Order, this case is **REMOVED** from the April trial calendar the final pretrial conference is **CANCELLED**.

4.  The parties shall meaningfully meet and confer—either via videoconference or in-person—to discuss whether they can settle this case or would benefit from a settlement conference before a magistrate judge. The parties shall file a joint notice as the status of this case on or before **April 13, 2023**, which includes an update on the parties' settlement efforts and their desire to conduct a settlement conference.

5.  The parties' pretrial motions (Docs. 83-88) are **DENIED as moot**.

**DONE** and **ORDERED** in Jacksonville, Florida this 15th day of March, 2023.

_____
BRIAN J. DAVIS
United States District Judge

2
Copies furnished to:

Counsel of Record
Unrepresented Parties